## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **IN RE: WILLIAM T. ADCOCK**<br>    **d/b/a RAINBOW CREDIT**<br>    (Alleged debtor)<br><br>**CLARENCE MUSE**<br>(Alleged petitioning creditor) | **CASE NO. 04-12955**<br>**CHAPTER 7**<br>**INVOLUNTARY PETITION**<br>**(Relief Not Ordered)** |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Considering the evidence presented on September 24 and 27, 2004 and October 8, 2004, the record of this case and applicable law, the Court issues the following findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

### Findings of Fact

(1) Clarence Muse filed or caused to be filed against William T. Adcock ("Adcock"), allegedly doing business as Rainbow Credit, an involuntary bankruptcy petition under 11 U.S.C. §303 on September 8, 2004.

(2) The Court ordered Clarence Muse to show cause why the involuntary bankruptcy petition should not be dismissed for failure to state a claim pursuant to 11 U.S.C. § 303(b), and why the "Notice of Bankruptcy Petition Chapter 7 303(b)(4) in a Foreign Proceeding" Muse filed or caused to be filed should not be stricken from the record as not authorized by applicable law.

(3) William T. Adcock, the alleged debtor, then moved to dismiss the involuntary petition as a bad faith filing within the meaning of 11 U.S.C. §303(i).

(4) Adcock never did business as Rainbow Credit Center. Adcock owns no interest in

Rainbow. Adcock has practiced law since 1977. At all times relevant to this proceeding, Adcock served as Rainbow's lawyer for a specific purpose in connection with Rainbow's efforts to collect a debt from Clarence Muse and his wife, Yvette Clay Muse. Adcock also operates Gulf Coast Title, a real estate title company.

(5) Clarence Muse is a self-employed carpenter. Yvette Muse has worked at the Louisiana School for the Visually Impaired intermittently for 15 years. No evidence was introduced to indicate that Muse or his wife had any formal education, training or experience in the law.

(6) Clarence Muse offered no evidence to support a finding that he or his wife were foreign governments, or foreign representatives within the meaning of 11 U.S.C. §§101(24) or 303(b)(4).

(7) Clarence and Yvette Muse asserted claims against Adcock and Rainbow Credit Center under documents admitted into evidence as exhibits A, B, C, D, E, F, F-1, H, J, K to K-5, L, X, Y and Z to Z-4. Clarence Muse also believes that his name and his wife's name are copyrighted, but his wife on cross examination admitted that the couple had not filed any papers with the United States Copyright Office to formally copyright the names.

(8) Clarence Muse did not consult a lawyer to establish the validity of his claims against Adcock or Rainbow before the involuntary petition was filed. Mr. Muse found the inspiration for his claims from *Redemption Under the Law*, a two-volume book whose author he cannot recall.

(9) The Muses sent the documents to William T. Adcock and Rainbow Credit Center only after Adcock, on behalf of Rainbow, communicated with the Muses in an attempt to collect debt the Muses owed to Rainbow. Rainbow had consulted Adcock concerning correspondence Muse sent it in response to a demand letter sent to Muse by Charles E. Spedale, Rainbow's lawyer. *See* Exhibit B.

Adcock treated the letter as Muse's dispute of Rainbow's claim under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1601 *et seq.*

(10)  Before Muse filed the involuntary bankruptcy petition, Yvette Muse filed into the records of the Clerk of Court for East Baton Rouge Parish on September 9, 2004 a UCC-1 financing statement asserting a security interest in assets of William T. Adcock and Rainbow.  The UCC-1 financing statement named Adcock and Rainbow as debtors, and identified Clarence Muse as the secured party.

(11) Clarence Muse caused his wife to file the financing statement in the public record.  He testified that he intended to "put a lien" against Adcock and Rainbow by filing the UCC-1 admitted into evidence as Exhibit F.  Yvette Muse testified that she was willing to terminate the UCC-1 filed against Adcock only as long as it was not adverse to her interests.  She insisted at trial that filing the involuntary bankruptcy petition against Adcock was "the right thing to do."

(12) Clarence Muse intentionally caused the involuntary bankruptcy petition and the UCC-1 financing statement to be filed in order to create bargaining leverage against Adcock and his client, Rainbow Credit Center.  Muse‹s motive was to use the tactics to obtain a favorable settlement of the Muses‹ unpaid debt to Rainbow.

(13) On other occasions involving other creditors, Clarence and Yvette Muse have used similar unreasonable and unfounded threats to file involuntary bankruptcy proceedings, and also unreasonable and unfounded demands for payment of large sums of money, to attempt to obtain bargaining leverage with their creditors.

(14) Specifically, Clarence Muse and Yvette Clay Muse admitted that they had used similar tactics, excepting only the filing of an involuntary bankruptcy petition, against their creditors, including

3

Fairbanks, Ameriquest, Baton Rouge Teachers Federal Credit Union, Deutsche Bank National Trust and local lawyers. Mrs. Muse testified that her daughter Tiffany Muse also employed similar tactics against her own creditors.

(15) William T. Adcock testified that the involuntary bankruptcy and UCC-1 filing will adversely affect his credit rating, even if the bankruptcy ultimately is dismissed and the financing statement terminated. He suggested that they also may cause his malpractice insurance premiums to rise. Adcock also feared that he might be unable to obtain underwriter approval to write title insurance, who he said would have concerns about how Adcock manages his escrow accounts if he was the subject of a bankruptcy filing. However, Adcock admitted that as of the time of trial, most of these damages were only "anticipated" losses, and thus speculative. He also anticipated incurring legal fees in an unspecified amount in connection with state court proceedings to obtain the cancellation of the UCC-1 financing statement the Muses filed against him.

(16) The damages analysis prepared by Shared Management Resources at Mr. Adcock's request (Exhibit 7) was speculative, and in any event was not offered through the testimony of a qualified expert. Moreover, the amount sought for time spent by Pamela Gallent, who briefly testified as a fact witness at trial, is not recoverable as damages. Ms. Gallent is marketing director for Gulf Coast Title, and her testimony concerning potential harm to the business as a result of the involuntary bankruptcy filing against Adcock was speculative.

(17) However, Adcock did suffer actual damages as a result of the involuntary bankruptcy petition and other actions of Clarence and Yvette Muse. Adcock sustained damages of $3000, representing the value of his time spent not working while this matter was tried. He also incurred

attorney's fees and costs of $6,985.50 to respond to the involuntary bankruptcy petition.

**Conclusions of Law**

(1)  As a matter of law, Clarence Muse and Yvette Clay Muse are not creditors of William T. Adcock.

(2)  As a matter of law, Clarence Muse and Yvette Clay Muse are not creditors of Rainbow Credit Center.

(3)  Specifically, the claims of Clarence Muse and his spouse, Yvette Clay Muse, that they are creditors of Adcock or Rainbow Credit based on the Uniform Commercial Code, House Joint Resolution 192 of 1933, are meritless and frivolous.

(4) Additionally, the Muses offered no evidence to support their arguments that their names in any form are subject to copyright protection under federal or Louisiana copyright law, or that the use of their names in demand letters or other documents by Adcock, Rainbow or its counsel gave rise to any claim as a matter of law.

(5)  Accordingly, Clarence Muse does not hold any claims against William T. Adcock or Rainbow Credit Center, and therefore was not eligible to petition for involuntary bankruptcy relief against either Adcock or Rainbow.  11 U.S.C. §303(b)(1).

(6)  Moreover, as a matter of federal and Louisiana law, the Muses' claim that either or both of them is a foreign government, or foreign representative within the meaning of 11 U.S.C. §§101(24) or 303(b)(4), is meritless and frivolous.

(7) Clarence Muse's petition for involuntary bankruptcy relief against William T. Adcock,

whether individually or doing business as Rainbow Credit Center, was filed in bad faith within the meaning of 11 U.S.C. §303(i)(2), and was frivolous, wilful and malicious.

(8)  Clarence and Yvette Muses' filing into the records of the Clerk of Court for East Baton Rouge Parish of a UCC-1 financing statement asserting a security interest in assets of William T. Adcock and Rainbow was frivolous, willful and malicious.

(9) As a matter of law, William T. Adcock is entitled to judgment against Clarence Muse and Yvette Clay Muse, dismissing the involuntary bankruptcy petition filed by Clarence Muse, awarding damages, and for other relief.

(10) The Court awards William T. Adcock $6,985.50 in attorney fees and costs pursuant to 11 U.S.C. §303(i)(2)(A).  The Court also awards William T. Adcock actual damages of $3000.

(11) Moreover, because Clarence Muse filed or caused to be filed the petition for involuntary bankruptcy relief against William T. Adcock d/b/a Rainbow Credit Center in bad faith, the Court awards William T. Adcock punitive damages of $15,000 pursuant to 11 U.S.C. §303(i)(2)(B).

(12)  Clarence and Yvette Clay Muse's use of the involuntary bankruptcy process and their associated demand for large sums from William T. Adcock and Rainbow Credit Center have substantially interfered with the administration of the bankruptcy system and the Courts of the United States.

(13) There is a substantial threat that Clarence or Yvette Clay Muse, or both, will again file or threaten to file, bad faith, frivolous involuntary bankruptcy petitions in similar efforts to avoid paying their debts, and to attempt to collect money.  That wrongful conduct is contrary to the public interest and is likely to cause irreparable harm to William T. Adcock, Rainbow Credit Center and Rainbow

Credit Center‹s employees and agents unless Clarence Muse and Yvette Muse, and anyone acting or purporting to act on their behalf, are enjoined from engaging in similar conduct in the future.  11 U.S.C. §105.

Baton Rouge, Louisiana, October 26, 2004.

**s/ Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE
